**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRADY BENNETT,** *individually and on behalf of all others similarly situated,* | ) ) ) ) | |
| | ) | **Civil Action No. 1:22-cv-00594** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Class-Action** |
| | ) | |
| **ZEN MEDIA LLC,** | ) | <u>**Jury Trial Demanded**</u> |
| | ) | |
| Defendant. | ) | |

## <u>CLASS ACTION COMPLAINT</u>

COMES NOW, Plaintiff, **Brady Bennett** ("Plaintiff" or "Mr. Bennett"), and on behalf of all others similarly situated, through his counsel, and for his Class Action Complaint against Defendant **Zen Media LLC** ("Defendant" or "Zen Media"), states:

### <u>Introduction</u>

1.     Plaintiff's Class-Action Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*

2.     In 1991, President George H.W. Bush signed into law the TCPA, which was passed in a bi-partisan manner, to protect consumers' privacy rights.  Specifically, the right to be left alone from unwanted telemarketing calls.

3.     A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.     The TCPA, through the accompanying Code of Federal Regulations, 47 C.F.R. § 64.1200 *et seq.*, affords special protections for people who registered their phone numbers on the National Do Not Call Registry.

5.      Where a consumer's phone number is registered on the Do Not Call registry, the TCPA requires that telemarketers provide clear and conspicuous notice to the consumer that it will be making telemarketing calls for solicitation or advertising purposes, and requires that the consumer provide express written consent.

6.      Section 227(c)(5) of the TCPA provides that each person who receives more than one call within a 12-month period on their phone, where that person did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7.      Plaintiff seeks to exercise his rights under the TCPA against Defendant Zen Media on behalf of himself and other similarly situated putative class-members.

## The Parties

8.      Plaintiff, Brady Bennett, is an adult citizen, who at all times relevant to this Complaint, resided in Cedar Park, Texas.

9.      Plaintiff Brady Bennett is a "person" as defined by 47 U.S.C. § 153(39) of the TCPA.

10.     Defendant Zen Media is a business entity with a principal place of business, head office, or otherwise valid mailing address at 2404 Royal Summit Drive, Carrollton, Texas 75006.

11.     Zen Media is a public relations and advertising firm.

12.     Zen Media transacts business in Texas and throughout the United States.

13.     Defendant Zen Media is a "person" as defined by 47 U.S.C. § 153(39) of the TCPA.

## Jurisdiction and Venue

14.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

15.     Defendant continuously and systematically transacts business in the State of Texas.

16.     At all times relevant hereto, Plaintiff resided in Williamson County, which is within this District.

17.     Defendant placed calls to Plaintiff on his cell phone number with a "512" area code, which is a Texas area code associated with the Austin region without his express written consent.

18.     Defendant's unwanted phone calls attempted to solicit business from Plaintiff while Plaintiff was within this District in the State of Texas.

19.     The subject calls would be irritating to any reasonable person who did not provide valid express written consent to receive such calls.  Plaintiff experienced the harm associated with Defendant's irritating and invasive telemarketing calls while he was in this District.

20.     For the foregoing reasons, personal jurisdiction exists and venue is proper, pursuant to 28 U.S.C. §§ 1391(b)(1) and  1391(b)(2).

**Procedural History**

21.     Plaintiff initially filed this class-action lawsuit against Clear Health, LLC, case no 1:21-cv-01117-RP.

22.     Former Defendant Clear Health confirmed it did not directly make any telemarketing calls to Mr. Bennett, rather calls were placed by Defendant Zen Media.

23.     Defendant Zen Media, LLC, upon information and belief, is and has been retained by various healthcare companies to place telemarketing calls for purposes of generating new business on their behalf. The calls in this case were placed in furtherance of that purpose.

24.     Accordingly, Plaintiff files this Amended Complaint against Zen Media, LLC on behalf of himself and others similarly situated.

**Background: Telemarketing and Soundboard Technology**

25.     During the past decade the already-controversial telemarketing industry has taken a turn to the dystopian.

26.     Certain call centers and telemarketing companies have shifted their primary method of calling from live agents who speak on the phone with consumers to avatar or "soundboard" technology, where an operator will click buttons to play specific pre-recorded

phrases and/or software is programmed to verbally respond to certain prompts from the consumer.

27.     The reasons for using the avatar or soundboard technology are simple: using software is cheaper than employing call center representatives, software can place a higher volume of calls than live humans, software does not exhibit human emotions, and the pre-recorded or automated voices will not have the accents present in many employees of overseas call centers who place calls to American consumers.  *See* Alexis C. Magrigal: *Almost Human: The Surreal, Cyborg Future of Telemarketing,* The Atlantic (December 23, 2013), *available at*:  https://www.theatlantic.com/technology/archive/2013/12/almost-human-the-surreal-cyborg-future-of-telemarketing/282537/).[1]

28.     In recent years, there have been many complaints from consumers about telemarketers that use soundboard technology related to the inability to interact with the technology in a manner that is akin to a traditional two-way conversation. *Soundboard Ass'n v. FTC*, 435 U.S. App. D.C. 208, 209, 888 F.3d 1261, 1262 (D.C. Circ. 2018) (upholding Federal Trade Commission (FTC) staff opinion that the technology constituted an "artificial or pre-recorded voice" as defined by the TCPA); *FCC Declaratory Ruling and Order DA 20-1507* (Dec. 18, 2020) (Federal Communications Commission (FCC) rejects challenge from soundboard-using alarm company and instead adopting the rulings of the FTC and D.C. Circuit.)

29.     Accordingly, both the FTC and FCC concluded that "soundboard technology" should be treated as a pre-recorded or artificial voice, even if a live agent can select verbal phrases in response to human prompts. *Soundboard Ass'n v. FTC*, 435 U.S. App. D.C. 208,

---

[1] This article does not use the term "soundboard technology" but rather "avatar" and "agent-assisted automation technology" The term "soundboard" appears to have been prevalent subsequent to this 2013 article.

209, 888 F.3d 1261, 1262 (D.C. Circ. 2018) (upholding FTC staff opinion that the technology constituted an "artificial or pre-recorded voice" as defined by the TCPA); *FCC Declaratory Ruling and Order DA 20-1507* (Dec. 18, 2020) (rejecting challenge from alarm company that utilized soundboard technology, and instead agreeing with the FTC and D.C. Circuit.)

30.   Notable excerpts from the FCC Declaratory Ruling follow:

8.   these commenters [those complaining of "interactions" with soundboard technology] indicate that the live agent rarely, if ever, speaks on such calls, and they offer examples of prerecorded responses to consumer questions via soundboard technology that are often nonsensical…

\*\*\*\*\*\*\*\*\*\*

11. Our decision is consistent with the FTC staff opinion on the applicability of its parallel Telemarketing Sales Rule to soundboard technology. Specifically, the FTC staff found that soundboard technology "delivers a prerecorded message" under the plain language of the rule and that, based on consumer complaints and press reports, does not "represent a normal, continuous, two-way conversation" because, among other things, the recordings do not always respond to consumer questions and the call is terminated in response to such questions

\*\*\*\*\*\*\*\*\*\*

16. the record indicates that soundboard agents routinely monitor multiple telephone calls simultaneously while rarely, if ever, speaking on these calls, and that the prerecorded messages they use are sometimes nonsensical to the consumer…

*FCC Declaratory Ruling and Order DA 20-1507*.

31.   Despite the problematic nature of soundboard technology, because of its apparent capacity for cost-saving, soundboard technology is still utilized by companies such as Zen Media.

**Brady Bennett, Zen Media and "Soundboard Tom"**

32.     At all times relevant hereto, Plaintiff, Brady Bennett maintained a cell phone, the number for which was (512) XXX-5325.

33.     Mr. Bennett used that cell phone primarily for residential purposes.

34.     Mr. Bennett registered his cell phone number on the National Do Not Call Registry on or around November 20, 2008.

35.     Mr. Bennett registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

36.     Defendant Zen Media is a public relations and advertising firm that promotes itself as using cutting edge and innovative marketing techniques.

37.     During the relevant time period, Zen Media engaged in telemarketing in order to solicit health insurance plans to customers on behalf of companies such as former Defendant Clear Health.

38.     In connection with those campaigns, Zen Media used artificial and/or pre-recorded voice(s) in its telemarketing calls.  Specifically, Zen Media uses "soundboard" or "avatar" voice technology in its telemarketing campaigns.

39.     Before Zen Media began placing telemarketing calls to Mr. Bennett's cell phone, Mr. Bennett did not provide express written consent for Zen Media to place such telemarketing calls.

40.     Furthermore, Bennett did not provide express written consent to receive calls about Medicare or other health insurance policies.

41.     Likewise, Zen Media did not present a clear and conspicuous disclosure to Mr. Bennett that it would make telemarketing calls to his cell phone.

42.     Mr. Bennett had no prior business relationship with Zen Media or any of the health insurance companies on whose behalf Zen Media was calling.

43.     Mr. Bennett was not in the market for Medicare supplemental insurance and had not consented to receive calls from telemarketers selling the same.

44.     On at least ten (10) unique instances in 2021 and 2022 (including at least four after Bennett filed the Clear Health action), Zen Media placed invasive and irritating telemarketing calls to Mr. Bennett's cell phone on multiple occasions using soundboard technology, in furtherance of its efforts to sell Medicare supplemental insurance plans.

45.     A concise summary of those calls follows below:

**Call 1: March 4, 2021 2:30 pm CST**

Bennett received a call from (512) 735-8399.  A pre-recorded voice purported to be a young-sounding man named "Tom" (hereinafter "Soundboard Tom") appeared on the line for Zen Media, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?"  The voice continued… "We are here to compare your secondary health insurance options to see if you might qualify for something more beneficial.  And the best part is there is no cost or obligation on your part for the discounted quote so is your Medicare part A and Part B active right now?"

In response to Mr. Bennett question "are you a recording?", Soundboard Tom quickly and enthusiastically said "No!" and then immediately and awkwardly began to pitch to Mr. Bennett various health insurance plans.

**Call 2: March 5, 2021 3:51 pm CST from**

Bennett received a call from Zen Media at (512) 735-8399.  Soundboard Tom's pre-recorded voice once again appeared on the line for Zen Media, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?"  Mr. Bennett responded "I'm still working…. I'm okay." Zen Media then disconnected the call.

**Call 3: March 18, 2021 10:20 am CST**;

Bennett received a call from Zen Media at (512) 741-4855.  Soundboard Tom's pre-recorded voice once again appeared on the line for Zen Media, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?"  The voice continued… "We are here to compare your secondary health insurance options to see if you might qualify for something more beneficial.  And the best part is there is no cost or obligation on your part for the discounted quote so is your Medicare part A and Part B active right now?"  Soundboard Tom went on to awkwardly proclaim: "You sound like a pretty sensible person to me, and I believe you make your own health insurance decisions, right?"

Shortly thereafter the call was transferred to a live person, who attempted to sell various insurance plans to Mr. Bennett.  In the course of that conversation with the live person, Bennett learned the company to whom he was transferred was former-Defendant Clear Health.

**Call 4: November 2, 2021 6:08 pm CST**;

Mr. Bennett received a call from Zen Media at (512) 777-3692.  Soundboard Tom's pre-recorded voice once again appeared on the line for Zen Media, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?"  The voice continued… "We are here to compare your secondary health insurance options to see if you might qualify for something more beneficial.  And the best part is there is no cost or obligation on your part for the discounted quote."

Thereafter, Mr. Bennett made it known the calls were unwanted.  Specifically, Mr. Bennett stated "I'm on the federal do not call list".  Soundboard Tom responded in non-communicative and meaningless fashion.  Instead of addressing Mr. Bennett's comment about being on the federal Do Not Call list, Soundboard Tom responded by asking Bennett "is your

Medicare part A and B active right now so is your Medicare part A and Part B active right now?"  The call was thereafter terminated.

**Call 5: November 17, 2021 2:48 pm CST**;

Mr. Bennett received another call from Zen Media at (512) 777-3692.  Soundboard Tom's pre-recorded voice once again appeared on the line for Zen Media, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?"  The voice continued… "We are here to compare your secondary health insurance options to see if you might qualify for something more beneficial.  And the best part is there is no cost or obligation on your part for the discounted quote."

Mr. Bennett asked "is this a recording?" Soundboard Tom responded with clearly robotic laughter: "hahahaha, yes this is a real person but I understand you being skeptical at the moment."  Zen Media then terminated the call.

**Call 6: November 20, 2021 3:33 pm CST**;

Mr. Bennett received another call from Zen Media at (512) 777-3692.  Soundboard Tom's pre-recorded voice once again appeared on the line, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?"

Mr. Bennett asked "Are you a real person?" Soundboard Tom responded with a long pause and then robotic laughter.  "Hahahaha, yes I am a real person."  Mr. Bennett asked "are you a recording?"  Zen Media then disconnected the call.

**Call 7: January 24, 2022 at 10:26 pm CST**

At this time, Mr. Bennett received another call from Zen Media.  Soundboard Tom's pre-recorded voice once again appeared on the line, stating:

"Hi! This is Tom. I'm with the Medicare Department at the Health Care Center, how are you doing today?  We're here to compare your secondary healthcare to see if you might qualify for something more beneficial, the best part is no cost or obligations on your part. Is your Medicare Part A and Part B active right now?

Mr. Bennett asked "what company to do you work for?"

Rather than answering the question, "Tom" stated "We are here to compare your secondary health insurance options"  The call was then disconnected.

**Call 8: February 2, 2022 at 2:08 pm CST**

At this time, Mr. Bennett received another call from Zen Media.  Soundboard Tom's pre-recorded voice once again appeared on the line, stating:

"Hi, this is Tom with the Medicare Department at the Healthcare Center, how you doing today?"

This time, Mr. Bennett advised that he had filed suit about these calls after which the call was disconnected.

**Call 9: February 3, 2022 at 9:38 am**

Mr. Bennett received another call from Zen Media.  Soundboard Tom's pre-recorded voice once again appeared on the line, stating:

"Hi, this is Tom with the Medicare Department at the Healthcare Center, how you doing today?  We're here to compare your secondary healthcare to see if you might qualify for something more beneficial, the best part is no cost or obligations on your part. Is your Medicare Part A and Part B active right now?"

When Bennett advised Tom he had sued for these phone calls in federal court, "Tom" hung up.

**Call 10: May 18, 2022 at 12:53 pm CST**

Mr. Bennett received another call from Zen Media.  Soundboard Tom's pre-recorded voice once again appeared on the line, stating:

"Hi, this is Tom with the Medicare Department at the Healthcare Center, how you doing today?"  Tom then exclaimed that "Rates have fallen by 35%" and asked "is your Medicare Part A and Part B active right now?"

Curious as to how Tom would respond to atypical prompts, Mr. Bennett asked Tom if he wanted to drink a beer.  The line was then disconnected by Zen.

46.    Defendant's phone calls to Plaintiff utilized automatically generated and/or pre-recorded voices.

47.    Specifically, Defendant used the same recorded message which identified the same artificial "person" in each call.  The tone of Soundboard Tom's voice and the verbage and tone was identical in each of the calls.  The voice on the other side would not respond to questions, but would rather follow the same scripts, regardless of what Plaintiff said or asked

48.    Defendant's calls were not made for "emergency purposes."

49.    Defendant's calls were not critical to the called party's health and there was no exigency to any of the calls.

50.    Defendant's incessant calls were bothersome, disruptive, and frustrating for Plaintiff to endure.

51.    Plaintiff was annoyed, irritated, upset and experience a sense that his privacy was violated by Defendant as a result of receiving multiple unwanted and unsolicited phone calls after he had long been registered on the National Do Not Call Registry.

**Class Allegations**

52.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Mr. Bennett brings this lawsuit as a class action on behalf of himself and all other similarly situated.  This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

53.     Upon information and belief, at all times relevant hereto, Zen Media did not provide clear and conspicuous notice that it would make telemarketing calls to consumers before doing so, even if a consumer had placed his or her number on the National Do Not Call Registry.

54.     Likewise, upon information and belief, at all times relevant hereto, Zen Media did not obtain express written consent or permission to place telemarketing calls to consumers even if a consumer had placed his or her number on the National Do Not Call Registry.

55.     Zen Media also did not obtain express written consent or permission to place calls to consumers using an artificial or pre-recorded voice.

56.     Zen Media's calls were made for telemarketing purposes, not for emergency purposes.

57.     Zen Media's calls were also not for conveying exigent health information.

58.     Mr. Bennett seeks to represent the following classes:

1.  **Prerecorded Voice Class:** All persons with cell phones during the time period from four years prior to the filing of this action until the date a class is certified, to whom Zen Media or someone acting on its behalf placed a call which utilized an artificial, automatically generated or prerecorded voice for the purpose of soliciting health insurance plans or

policies.  Excluded from the class are all persons who were current or former Zen Media customers at the time they received such calls; and

2. **Do-Not-Call Registry Class:** For the period from four years prior to the filing of this suit until the date a class is certified, all persons in the United States who: (1) received more than phone call from Zen Media or someone acting on its behalf, for the purpose of soliciting goods or services, during a 12-month period; and, (2) received those calls on numbers that registered on the Do Not Call Registry for more than 31 days at the time the call(s) were received.

59.    Mr. Bennett reserves the right to add administrative subclasses, or to amend the definition of the proposed classes, during the lawsuit proceedings.

60.    The members of the proposed classes are so numerous that joinder of all members is impracticable.  Mr. Bennett reasonably believes that hundreds or thousands of people have been harmed by Zen Media's actions.  The names and phone numbers of the members of the proposed class are readily identifiable through records available to Zen Media or those acting on its behalf.

61.    Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

62.    On information and belief, Zen Media has called and continues to call/text people who are registered on the National Do Not Call Registry.  It is reasonable to expect that Zen Media will continue to make such calls/texts absent this lawsuit.

63.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members.  The questions of law and fact common to the proposed class include, but are not limited to:

a.  Whether Zen Media or someone acting on its behalf placed calls to Bennett and the putative class members using an artificial or pre-recorded voice without having prior express written consent;

b.  Whether Zen Media or someone acting on its behalf placed two or more telemarketing calls to Mr. Bennett and the putative class members after their numbers were registered on the National Do Not Call Registry more than 31 days;

c.  Whether Zen Media's policies and procedures for providing disclosure that telemarketing calls would be made to a consumer was adequately clear and conspicuous;

d.  Whether Zen Media's policies and procedures for procuring express written consent or permission to place telemarketing calls to consumers on the Do Not Call Registry were adequate;

e.  Whether Zen Media's conduct violates 47 U.S.C. § 227(b)(1) and/or § 227(c)(5);

f.  Whether Zen Media's conduct violates the rules and regulations implementing the TCPA;

g.  Whether Mr. Bennett and the putative class members are entitled to increased damages for each violation based on the willfulness of Zen Media's conduct;

64.   Mr. Bennett's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

65.   Mr. Bennett and his counsel will fairly and adequately protect the interests of the members of the proposed class.  Mr. Bennett's interest do not conflict with the interest of the proposed class he seeks to represent.  Mr. Bennett has retained lawyers who are competent and experienced in call action, TCPA litigation and consumer law.

66.   Mr. Bennett's counsel will vigorously litigate this case as a class action, and Bennett and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

67.   A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the

individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

68.     In contract, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

69.     Questions of law and fact, particularly the propriety of calling/texting phone numbers registered on the National Do Not Call Registry, predominate over questions affecting only individual members.

70.     Zen Media has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

## Count I - Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)(1)

71.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

72.     Mr. Bennett brings this Count individually and on behalf of all others similarly situated.

73.     The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has

the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

74.     By calling Mr. Bennett and the putative class members with a prerecorded voice, and without prior express consent of the called party to make such calls, Zen Media violated the TCPA including but not limited to 47 U.S.C. § 227(b)(1).

75.     The TCPA provides a private right of action and statutory damages of $500 per violation, and up to $1,500 if the violated is determined to be willful. 47 U.S.C. § 227(b)(3).

76.     Defendant initiated numerous calls to Plaintiff and the putative class members using an automatically generated or pre-recorded voice.

77.     Defendant's calls were not made for "emergency purposes."

78.     Defendant's calls to Plaintiff and the putative class members were made without any prior express written consent.

79.     Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff and the putative class members.

80.     Bennett and the putative class members are entitled to damages of $500.00 per violation for each call placed by Zen Media and up to $1,500.00 per violation if the Court finds that Zen Media willfully violated the TCPA.

## **Prayer for Judgment**

WHEREFORE, Plaintiff Brady Bennett, individually, and on behalf of all others similarly situated, requests the Court grant the following relief.

a. Enter an order against Defendant Zen Media LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Bennett as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel;

c. Enter judgment in favor of Mr. Bennett and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(b) and up to $1,500 per violation of that subsection if Zen Media LLC willfully violated the TCPA;

d. Award Mr. Bennett and the class all expenses of this action, and requiring Zen Media to pay the costs and expenses of class notice and administration; and,

e. Award Mr. Bennett and the class such further and other relief the Court deems just and appropriate.

**Count II - Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

81.    Mr. Bennett incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

82.    Mr. Bennett brings this Count individually and on behalf of all others similarly situated.

83.    The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

84.    The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

85.     In addition, the TCPA allows the Court to enjoin Zen Media's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

86.     By calling Mr. Bennett and the putative class members after their numbers were registered on the National Do Not Call Registry, Zen Media violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

87.     Zen Media knew or should have known that Mr. Bennett and the putative class members had their numbers registered on the Do Not Call Registry.

88.     Bennett and the putative class members are entitled to damages of $500.00 per violation for each call placed by Zen Media and up to $1,500.00 per violation if the Court finds Zen Media willfully violated the TCPA.

## Prayer for Judgment

WHEREFORE, Plaintiff Brady Bennett, individually, and or behalf of all other similarly situated, requests the Court grant the following relief:

a.  Enter an order against Defendant Zen Media LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Bennett as the class representative;

b.  Enter an order appointing Kimmel & Silverman, P.C as class counsel;

c.  Enter judgment in favor of Mr. Bennett and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c)(5) and up to $1,500 per violation of that subsection if Zen Media LLC willfully violated the TCPA;

d.  Enter a judgment in favor of Mr. Bennett and the putative class that enjoins Zen Media from violating the TCPA's regulations prohibiting Zen Media from calling/texting numbers registered on the National Do Not Call Registry;

e.  Award Mr. Bennett and the class all expenses of this action, and requiring Zen Media to pay the costs and expenses of class notice and administration; and,

f.   Award Mr. Bennett and the class such further and other relief the Court deems just and appropriate.

## **Demand for Jury Trial**

PLEASE TAKE NOTICE that Plaintiff, BRADY BENNETT, demands a jury trial in this case.

Respectfully submitted,

Kimmel & Silverman, P.C.

Dated: June 17, 2022

By:  */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Craig T. Kimmel, Esq.
30 East Butler Ave.
Ambler, PA 19002
Phone: (215) 540-8888 x 104
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
kimmel@creditlaw.com
teamkimmel@creditlaw.com